[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-14930

_____

LOUIS DEL FAVERO ORCHIDS, INC.,

Plaintiff-Appellant,

versus

SCOTT RIVKEES,
Individually and in his official capacity as
Surgeon General and Secretary of the
Florida Department of Health,
CHRISTIAN BAX,
Individually,
COURTNEY COPPOLA,
Individually,
LOUISE ST. LAURENT,
Individually,
CELESTE PHILLIP,

2                    Opinion of the Court                    19-14930

Individually, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:19-cv-00284-RH-MJF

_____

Before WILSON, ROSENBAUM, and ED CARNES, Circuit Judges.

ROSENBAUM, Circuit Judge:

Despite initial appearances, this isn't a case about medical marijuana. Nor is this a case about the allegedly wrongful denial of a license to dispense medical marijuana. This also isn't a case about a state agency that has allegedly ignored a state constitutional directive to license medical marijuana dispensaries, either. Instead, this is a case about whether there's a federal constitutional "property right" to process. There isn't. To be sure, a federal constitutional right to process *to protect* constitutional rights to life, liberty, and property exists. But *process itself* is not a property right—that would be circular.

Plaintiff-Appellant Louis Del Favero Orchids, Inc. ("Del Favero"), applied for a license to dispense medical marijuana from the Florida Department of Health ("the Department"). But the

Department didn't approve or deny Del Favero's application. Instead, it told Del Favero that it wasn't accepting applications (yet) and that it would publish a notice in the Florida Administrative Register when the application period opened. Del Favero didn't accept this answer and sued the Department, claiming that the Department had deprived Del Favero—not of the right to a license—but of the right to have its application for a license *reviewed*. The district court dismissed Del Favero's complaint.

After a thorough review of the record and with the benefit of oral argument, we affirm the district court's judgment because the federal procedural-due-process clause doesn't guarantee process *as an end in itself*; it guarantees process only as process *regards* a substantive right.

## I.    FACTUAL BACKGROUND

This dispute arises from interlocking Florida constitutional and statutory provisions governing the licensing of Medical Marijuana Treatment Centers ("Centers"). So before we get to the matter at hand, we must first review (1) the Florida Compassionate Medical Cannabis Act of 2014 (the "Act"); (2) Article X, Section 29 of the Florida Constitution; (3) a 2017 amendment to the Act; and (4) some regulations promulgated under the Act.

### A. *Florida's Medical Marijuana Regulatory Scheme*

This case finds its origins in 2014, when Florida passed the Act. The Act legalized cultivating, processing, and dispensing (to qualified patients) medical marijuana. FLA. STAT. § 381.986(1)

(2014). It also directed the Florida Department of Health to "[a]uthorize the establishment of five dispensing organizations" and ordered that the Department "shall develop an application form" for potential dispensing organizations. *Id.* § 381.986(5)(b) (2014). To accomplish these things, the Act empowered the Department "[a]dopt [necessary] rules." *Id.* § 381.986(5)(d) (2014).

Two years later, Florida voters approved a ballot initiative amending the Florida Constitution to add deadlines for the Department to fulfill its duties. The Amendment—codified as Article X, Section 29 of the Florida Constitution—directed that the Department "shall issue reasonable regulations necessary for the implementation of this section. . . . It is the duty of the Department to promulgate regulations in a timely fashion." FLA. CONST. art. X, § 29(d). More concretely, the new section of the Constitution required the Department to "promulgate[] no later than six (6) months after the effective date of this section"—or by June 3, 2017—regulations establishing "[p]rocedures for the registration of [Centers] that include procedures for the issuance, renewal, suspension and revocation of registration[.]" *Id.* § 29(d)(1)c. Section 29 also provided that "[i]f the Department does not issue regulations, or if the Department does not begin issuing identification cards and registering [Centers] within the time limits set in this section, any Florida citizen shall have standing to seek judicial relief to compel compliance with the Department's constitutional duties." *Id.* § 29(d)(3).

19-14930                 Opinion of the Court                 5

Following the amendment, the Florida legislature modified the Act to track the new constitutional language. The amended Act required the Department to license Centers that fell into particular categories. FLA. STAT. § 381.986(8)(a)(1).

First, under the new version of the law, the Department of Health had to—"[a]s soon as practicable, but no later than July 3, 2017"—relicense any Center that had a license before the amendment and which continued to meet the statutory requirements. *Id.*

Second, the amended Act required the Department of Health to distribute ten licenses to (1) applicants who, among other requirements, had applied for a license under the predecessor law and been denied and (2) applicants who were "a recognized class member of *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999), or *In Re Black Farmers Litig.*, 856 F. Supp. 2d 1 (D.D.C. 2011)." *Id.* § 381.986(8)(a)2a–b. Of these ten licenses, the Department had to issue at least one to a member of the second category. *Id.* § 381.986(8)(a)2b. More specifically, under the amended law, the Department had to, "[a]s soon as practicable, but no later than October 3, 2017 . . . license applicants that meet the requirements of this section in sufficient numbers to result in 10 total licenses issued under this subparagraph, while accounting for the number of licenses issued under sub-subparagraphs a. and b." *Id.* § 381.986(8)(a)2c. And "[f]or up to two of the licenses issued under subparagraph 2., the amended Act required the "[D]epartment [to] give preference"

to applicants planning to convert a citrus-fruit or citrus-molasses facility to process marijuana. *Id.* § 381.986(8)(a)3.[1]

To recap then, under the amended Act, the Department had to relicense active Centers by August 1, 2017. The amended Act also required the Department, by October 2017, to distribute up to ten licenses to (1) formerly unsuccessful applicants and (2) members of two specified litigation classes, and to give preference to applicants using converted citrus facilities.

As to the licensing process, the amended Act specified that licensing applicants had to "apply to the department on a form prescribed by the [D]epartment and adopted in rule." *Id.* § 381.986(8)(b). And the amended Act required the Department to "adopt rules pursuant to [sections] 1200.536(1) and 120.54 establishing a procedure for the issuance and biennial renewal of licenses[.]" *Id.* Subject to the initial limits of ten licenses and the designated groups of recipients, the amended Act also provided that "the [D]epartment shall issue a license to an applicant if the applicant meets the requirements of this section and pays the initial application fee." *Id.*

---

[1] The ten licenses were just the beginning. The new law also required the Department to license four Centers within six months after the registration of 100,000 active qualified patients (and then four more Centers within six months of the registration of every additional 100,000 patients). *Id.* § 381.986(8)(a)4.

A couple of months after the law went into effect, the Department promulgated an emergency administrative rule.  FLA. ADM. CODE R. 64ER17-2(1), (1)(e), (4).  The emergency rule stated that the Department "shall publish in the Florida Administrative Register and on its website the date upon which the [D]epartment will begin accepting applications and the deadline to receive all applications."  *Id.*  Besides this directive, the emergency rule linked to an application form and explained how applications would be scored.  *Id.*[2]

### B.  *State Court Litigation and Del Favero's Efforts to Obtain a Center License*

In December 2017, a company other than Del Favero—Florigrown, LLC—challenged the constitutionality of the 2017 law and the Department's regulations.  *See Fla. Dep't of Health v. Florigrown, LLC*, 317 So. 3d 1101 (Fla. 2021).  Del Favero intervened in support of Florigrown.

In the course of those proceedings, on October 5, 2018, a state trial court enjoined Florida's Department of Health from issuing Center licenses "pursuant to the unconstitutional legislative scheme set forth in" section 381.986; (2) required the Department

---

[2] In both July and November 2017, the Department published "Constitutional Regulations" explaining that the Department would begin—but had not yet begun—accepting applications and would publish a notice in the Florida Administrative Register.  *See MedPure, LLC v. Dep't of Health*, 295 So. 3d 318, 321 n.3 (Fla. Dist. Ct. App. 2020).

to start "registering [Centers] in accordance with the plain language of the Medical Marijuana Amendment"; and (3) required the Department to give Florigrown a license. *Fla. Dep't of Health v. Florigrown, LLC*, 320 So. 3d 195 (Fla. Dist. Ct. App. 2019), *reversed in part by Fla. Dep't of Health v. Florigrown, LLC*, 317 So. 3d 1101 (Fla. 2021). Soon after, though, a state intermediate court stayed the injunction.

While the state-court litigation was proceeding, Del Favero bought a citrus-processing facility for three-quarters of a million dollars—to capitalize on the preference afforded such applicants—and applied for a Center license on October 8, 2018. Del Favero didn't receive a response. So it resubmitted its application—with the full application fee of $60,830—on October 17, 2018.

Del Favero still didn't get a response. So in January 2019, Del Favero sent the Department a letter claiming a "default license" under Florida Statutes section 120.60(1). That section provides that, if the Department doesn't approve or deny a license application within ninety days of submission, and the applicant provides notice to the agency, then the applicant can claim use of a "default license." FLA. STAT. § 120.60(1).

The Department returned Del Favero's application fee and responded that Del Favero's application was premature because the Department had not yet published notice that it was accepting applications. Del Favero, the Department warned, did *not* have a default license.

19-14930                Opinion of the Court                9

## II.    PROCEDURAL HISTORY

Del Favero sued the Florida Department of Health and several Department officials for allegedly violating its Fourteenth Amendment procedural-due-process rights under 42 U.S.C. § 1983. In its complaint, Del Favero said that it "enjoy[ed] a state-created property interest in having its application to be a [Center] reviewed by the [Department]." The Department, it contended, "deprived [Del Favero] of this property interest by refusing to review [Del Favero's] application in violation of these provisions."

The Department and Department officials moved to dismiss for five reasons. First, they said, the district court should abstain from hearing the case because of the *Pullman*, *Burford,* and *Colorado River* abstention doctrines.[3] Second, they argued that sovereign immunity and qualified immunity barred Del Favero's official-capacity claim against the Department and its individual-capacity claims against the Department officials, respectively. Third, the defendants asserted that Del Favero wasn't an applicant for a license because the published regulations plainly stated that the application period hadn't yet opened. Fourth, the defendants contended that Del Favero hadn't stated a claim for the denial of procedural due process because—even assuming Del Favero was an applicant—only license *holders*, not license *applicants*, possessed a

---

[3] *See, e.g.*, *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

property right protected by the Fourteenth Amendment. And fifth, the Department concluded that, even if Del Favero had a property interest in obtaining a license, its due-process rights weren't violated because it could sue (and had, in fact, sued) in the Florida state courts.

Upon review of the defendants' motion, the district court ordered Del Favero to address in its response whether "a person has a constitutional right to due process in connection with an application for a state license that, if issued, purportedly would authorize the person to commit a federal crime."

Del Favero responded that the Controlled Substances Act didn't prohibit possession of a license under state law. Rather, it said, we determine property interests protected by the due-process clause by reference to state law, so what federal law prohibited didn't affect the procedure a state needed to provide before depriving a citizen of a state-created property right. Then, in addressing the defendants' arguments, Del Favero contended that the district court didn't need to abstain because the pending state-court actions wouldn't resolve its federal-law challenges. As to the defendants' immunity arguments, Del Favero argued both that (1) reviewing its application wasn't a discretionary function and that (2) the law was clearly established that state officials couldn't refuse to do their jobs to review and approve or deny pending applications. On the merits, Del Favero said that the Department had deprived it of a property right—"a [s]tate-[c]reated [p]roperty [i]nterest in [h]aving

its [Center] [a]pplication [r]eviewed." Finally, Del Favero asserted that state-court procedures didn't provide an adequate remedy because Del Favero could obtain only injunctive relief—not damages for the time and money it had lost in the meantime.

The district court dismissed Del Favero's claims because federal law prohibited possessing, distributing, or manufacturing marijuana. So in the district court's view, an interest in a license to possess, distribute, or manufacture marijuana wasn't a property interest protected by the federal Constitution. Del Favero now appeals.

### III.    STANDARD OF REVIEW

"We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quotations omitted).

### IV.    DISCUSSION

As we explain below, Del Favero's complaint fails to state a claim because it alleges a "property" interest—not in property—but in procedure. That is, Del Favero's claimed property interest is not in a license, but in having its license application reviewed. And the Supreme Court has repeatedly explained that the due-process clause requires process only to protect certain *rights* (like property) and doesn't require process to protect *process*. For this reason—and because we may affirm on any ground supported by the

record, *see Long v. Comm'r*, 772 F.3d 670, 675 (11th Cir. 2014)—
we affirm the district court's dismissal of the case.

The Fourteenth Amendment provides that states shall not
"deprive any person of life, liberty, or property, without due pro-
cess of law." U.S. CONST. amend. XIV, § 1. The Supreme Court
construed this clause as protecting two concepts: (1) substantive
due process and (2) procedural due process. *See Cleveland Bd. of
Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The categories of
substance and procedure are distinct."). As Del Favero alleges a
violation of procedural-due-process rights, we must "determine
whether [it] was deprived of a protected property interest, and if
so, what process was due." *Barnes v. Zaccari*, 669 F.3d 1295, 1303
(11th Cir. 2012).

Del Favero's claim fails because it hasn't alleged the depriva-
tion of a property interest. "[P]roperty interests subject to proce-
dural due process protection are not limited by a few rigid, tech-
nical forms. Rather, property denotes a broad range of interests
that are secured by existing rules or understandings." *Id.* (citation
omitted). Property interests don't come from the Constitution; in-
stead, they are created (or recognized) by "independent source[s]
such as state law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748,
756 (2005) (quotation marks and citations omitted). The Supreme
Court has been clear that procedural due process requires adequate
procedures to protect "certain substantive rights." *Loudermill*, 470
U.S. at 541. But procedural due process doesn't create a standalone
right to process itself.

19-14930                Opinion of the Court                13

Three cases illustrate this distinction.  First, consider *Olim v. Wakinekona*, 461 U.S. 238 (1983).  There, the plaintiff sued a Hawaii state prison for transferring him to an out-of-state prison.  *Id.* at 249.  The Supreme Court held that the plaintiff's procedural-due-process rights weren't violated because the administrator enjoyed "completely unfettered" discretion to transfer the plaintiff, so the plaintiff didn't have a substantive right at stake.  *Id.*  The Supreme Court explained that the circuit court had erred by focusing on the fact that the prison regulations "require[d] a particular kind of hearing before the administrator can exercise his unfettered discretion." *Id.* at 250.  But "[p]rocess is not an end in itself," the Supreme Court declared.  *Id.*  Rather, the Court continued, "[i]ts constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."  *Id.*  The Court concluded that "[t]he State may choose to require procedures . . ., of course, but in making that choice the State does not create an independent substantive right."  *Id.* at 250–51.

Second, we look at *Loudermill*.  The plaintiff there was a public employee who was fired, he asserted, without a meaningful opportunity to contest the reason for his termination.  *Loudermill*, 470 U.S. at 536.  Before the Supreme Court, the city-defendant argued that, while public employment was a property interest, the termination procedures laid out by statute *defined* (or limited) that property interest.  *Id.* at 539–40.  The Supreme Court rejected that view, explaining that "'[p]roperty' cannot be defined by the procedures provided for its deprivation any more than can life or liberty"

because otherwise the "[c]lause would be reduced to a mere tautology." *Id.* at 541.

And third, in *Town of Castle Rock*, the plaintiff argued that the police had violated her procedural-due-process rights by failing to enforce a protective order. 545 U.S. at 763. The Supreme Court rejected this argument because the *enforcement* of the arrest warrant didn't constitute property. *Id.* at 768. The Supreme Court said that "the seeking of an arrest warrant would be an entitlement to nothing but procedure—which we have held inadequate even to support standing; much less can it be the basis for a property interest." *Id.* at 764 (cleaned up). As Justice Souter explained in his concurrence, "the federal process protects the property created by state law. But [plaintiff] claims a property interest in a state-mandated process in and of itself . . . . This argument is at odds with the rule that '[p]rocess is not an end in itself.'" *Id.* at 771 (Souter, J., concurring) (citing *Olim*, 461 U.S. at 250). A different rule, Justice Souter said, would "would federalize every mandatory state-law direction to executive officers" and "work a sea change in the scope of federal due process." *Id.*

Here, Del Favero may or may not have a property right in a Center license, but it doesn't have a property right in the process of licensure. That is, we assume without deciding that Del Favero could have had a property interest in a Center license.[4] So when

---

[4] Because we affirm the district court's dismissal of this case since Del Favero has no due-process right in process itself, we do not opine on either the district

the Department reviews Del Favero's application, as a license applicant, Del Favero might be entitled to certain process before the Department grants or denies its application—for example, to have its Center application evaluated by a neutral decisionmaker according to publicly available objective criteria and with the opportunity to respond. *Cf.* Henry Friendly, *"Some Kind of Hearing"*, 123 U. PA. L. REV. 1267 (1975). But that isn't the property right Del Favero complains it lost. Rather, Del Favero insisted, over and over, that it was deprived of its "property right" in having *its application reviewed*. But as we have explained, that isn't a property right. *Loudermill*, 470 U.S at 541 ("'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty."). Instead, procedural due process protects only substantive rights, and "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim*, 461 U.S. at 250. There is a difference between a right to a license and the right to have an application reviewed.

Against this, Del Favero points out that the Florida Constitution provides "any Florida citizen . . . standing to seek judicial relief to compel compliance with the Department's constitutional duties." FLA. CONST. art. X, § 29(d)(3). And it's true that the Florida Constitution can recognize an interest as sufficient to support

---

court's basis for dismissing this case or on the defendants' alternative bases for arguing that Del Favero's claim fails.

16                    Opinion of the Court                    19-14930

standing in Florida *state* courts.  But when making a claim in *federal* court for violation of the *federal* Due Process clause, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement.'"" *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  And federal constitutional law doesn't recognize the right that Del Favero seeks here—a property right to state process.  In other words, Del Favero might have a cause of action, but its cause of action would be under state law, not under federal constitutional law.  So it must therefore seek relief in state court.[5]

## V.    CONCLUSION

Because Del Favero doesn't have a property interest in the MMTC application process being opened, the district court correctly concluded that Del Favero's procedural due process rights were not violated.

**AFFIRMED.**

---

[5] Del Favero said in passing that it had a property interest in the default license. But it didn't develop this argument before the district court, instead falling back to its process-as-property arguments.  In any event, a state court has since ruled that the default licensure provisions do not apply to Center licenses. *See Louis Del Favero Orchids, Inc. v. Fla. Dep't of Health*, 2019-CA-1047 (Fla. Leon Cnty. Ct. July 30, 2021).